# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RASHPAL SINGH, | Case No. 1:16-cv-00446-SAB |
| Plaintiff, | ORDER GRANTING IN PART PLAINTIFF'S SOCIAL SECURITY APPEAL, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, REMANDING MATTER FOR FURTHER ADMINISTRATIVE PROCEEDINGS, AND DIRECTING CLERK OF COURT TO CLOSE CASE |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| | (ECF Nos. 14, 15, 16) |

## I.

## INTRODUCTION

Plaintiff Rashpal Singh ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his applications for disability benefits and supplemental security income pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from a seizure disorder, affective/anxiety disorders, headaches, hypertension, status post closed head injury, and obesity. For the reasons set forth below, Plaintiff's Social Security appeal is granted in part and Defendant's motion for summary

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 6, 8.)

judgment is denied.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for disability benefits on August 6, 2012, and an application for supplemental security income on August 17, 2012, in both alleging disability beginning on November 11, 2011.  (AR 195-209.)  Plaintiff's applications were initially denied on September 14, 2012, and denied upon reconsideration on May 8, 2013.  (AR 79-126.)  Plaintiff requested and received a hearing before Administrative Law Judge Robert Milton Erickson ("the ALJ").  Plaintiff appeared for a hearing on July 11, 2014.  (AR 35-78.)  On October 28, 2014, the ALJ found that Plaintiff was not disabled.  (AR 6-21.)  The Appeals Council denied Plaintiff's request for review on February 1, 2016.  (AR 1-3.)

**A.    Hearing Testimony**

Plaintiff testified at the July 11, 2014 hearing and was represented by counsel.[2]  Plaintiff has not worked anywhere for an hourly salary since November 14, 2011.  (AR 42.)  He has not been making anything and selling it or selling anything that someone else made.  (AR 42-43.)  He used to own a tractor-trailer combination rig, but he sold it approximately a year after his alleged onset of disability.  (AR 42-43.)

He lives with his wife and two daughters.  (AR 44.)  His oldest daughter graduated from high school in May 2014 and he attended the commencement ceremony, which lasted for approximately thirty minutes.  (AR 44.)  He did not go to a party after the graduation.  (AR 45.)  He did not talk to any of the other parents at the graduation because he does not understand too much English.  (AR 45.)  His other daughter just finished the seventh grade.  (AR 45.)  He did not go to any of her plays, presentations, or science fairs at school during the 2013-2014 school year because he cannot stay a long time and he "cannot drive her car."  (AR 45-46.)

He used to have his commercial driver's license ("CDL") so that he could drive a truck, but he no longer does because his doctor contacted the DMV.  (AR 46.)  He cannot drive even a

---

[2] The ALJ left the record open for thirty days so that Plaintiff could submit additional treatment notes.  (AR 69.)

passenger car because of the medication he is on.  (AR 46-47.)  His wife drives him and their daughter to Visalia so their daughter can attend college.  (AR 48-49.)  The drive is approximately forty-five minutes and Plaintiff has to stop along the way because he is tired and cannot sit for more than a half hour at a time.  (AR 49-50.)  After thirty minutes in the car, he gets dizzy and sleeps.  (AR 50.)

He does not know how to use a computer, does not have a smart phone, and at the time of the hearing, did not have a cell phone.  (AR 50.)  He does not go for any walks, except in his front yard, back yard, and a country park that is a quarter mile from his house.  (AR 50-51.)  Starting in 2012, he could walk for only fifteen to twenty minutes before he would get dizzy and tired and have to stop and rest.  (AR 51.)  He does not have any pets.  (AR 52.)  He does not go to the movies or any community events.  (AR 52.)  He goes to the temple close to his house on his bike or is driven in a car.  (AR 52-53.)  He can ride a bike for twenty minutes before he has to stop because he gets dizzy and tired.  (AR 53.)  He is able to stay for the thirty minute temple service and socialize outside the temple for thirty minutes.  (AR 53-54.)

He has headaches after he takes his seizure and blood pressure medications.  (AR 63.)  His headaches last all day and even two or three days.  (AR 63.)  He takes Aspirin or Tylenol, but it "cannot work."  (AR 63.)

He sees Dr. Radhey Bansal, a family doctor in Delano, every two months.  (AR 64-65.)  At his last appointment, Dr. Bansal changed his blood pressure medication.  (AR 65.)  Even when Dr. Bansal changed his seizure medication, there was no difference in his headaches.  (AR 66-67.)  He takes naps during the day for two or three hours after he takes his medication.  (AR 67.)

Plaintiff has problems with concentration and focusing and he does not watch much TV.  (AR 65.)  He has problems remembering and is forgetful.  (AR 65-66.)  He gets dizzy from his lower back and heart and then it looks like he is going to fall down.  (AR 63-64.)  He has not seen a neuropsychologist.  (AR 68.)

In 1999, Plaintiff worked for GSK Trucking driving a tractor-trailer rig.  (AR 70-71.)  He would sometimes drive his truck to Redding and Sacramento.  (AR 70.)  He did not load or

1   unload the truck.  (AR 70-71.)  He did not prepare any reports; he just kept and turned in the

2   individual slips.  (AR 71.)  Plaintiff completed high school in India, and has not done any adult

3   education courses in English in the United States.  (AR 74.)

4          Dr. H. Alexander testified as a medical expert.  He had reviewed exhibits 1 through 9F.

5   (AR 54.)  He testified that as far as he knew there are clinical studies establishing that Plaintiff

6   has been taking antiseizure medication at therapeutic levels since November 14, 2011.  (AR 55.)

7   He noted that there was one Dilantin study that is less than therapeutic on January 24, 2012.  (AR

8   55, 448.)  Based on Dr. Alexander's review of exhibits 1 through 9F, the diagnoses for Plaintiff

9   for November 14, 2011, through July 11, 2014, are: subarachnoid hemorrhage sustained on a fall

10  from a truck on November 14, 2011; grand mal seizures, with witnessed seizures on February 11,

11  2012, and February 15, 2012; high blood pressure, with normal entries and no evidence of

12  stroke, heart failure, a secondary impairment, or end organ impairment; and evaluation for chest

13  pain with no posterior infarct on his study, but no evidence of coronary artery disease and no

14  catheterization, so that is not severe.  (AR 56-67.)

15         Plaintiff had a closed head injury on November 14, 2011, and then no objective residual

16  except seizures.  (AR 58.)  Dr. Alexander opined that Plaintiff did not meet Listings 11.02 and

17  11.03 for seizure disorder.  (AR 58.)  Plaintiff's last seizure was on February 15, 2012, so his

18  seizure disorder has been controlled or is not in evidence since February 15, 2012.  (AR 58.)

19         Dr. Alexander testified that there were no records that establish that Plaintiff has a

20  degenerative disc disease.  (AR 57.)  There were several records where Plaintiff complained of

21  back pain without imaging studies.  (AR 57.)   While osteoarthritis in multiple joints and

22  moderate degenerative disc disease were listed diagnoses, Dr. Alexander found no objective

23  evidence to support those diagnoses.  (AR 57.)

24         Plaintiff does not have any limitations in his ability to lift or carry.  (AR 58.)  Dr.

25  Alexander would assess a residual functional capacity ("RFC") limiting Plaintiff's exposure to

26  hazards; limiting his exposure to ropes, ladders, or scaffolding; and no unprotected heights,

27  heavy machinery with rapidly-moving parts, open flames, or open water. (AR 58-59.)

28         Dr. Alexander opined that Plaintiff did not have any documented seizures since February

15, 2012, and he is in the category of having controlled seizures.  (AR 59.)  Dr. Alexander indicated that he would mark the form in Virginia that Plaintiff is allowed to drive since his seizures have been controlled for greater than six months.  (AR 59.)  However, he is not familiar with commercial licenses.  (AR 60.)  He does not know what the laws are in California.  (AR 60.)  Plaintiff's usage of Phenytoin EX, 100 milligrams, for seizures would not affect his ability to drive a vehicle if it was in the appropriate dosage.  (AR 60-61.)

Dr. Alexander would need diagnostic information to determine if an individual's dizziness and/or vertigo were related to a closed head injury with moderate to severe hemorrhaging.  (AR 61.)  It would be reasonable for a person to suffer from headaches after a closed head injury with moderate to severe hemorrhaging, but the injury would have to be indicated as the cause of the headaches.  (AR 61.)

Dr. Alexander indicated that he interpreted Dr. Bansal's May 3, 2013 medical source statement to be that Plaintiff could not drive because he has a history of seizures and the state law does not allow a commercial driver's license to be issued to someone who has ever had a seizure.  (AR 62.)

Vocational Expert ("VE") Thomas Dachelet also testified.  The VE testified that he would advise the ALJ of any parts of his testimony that would differ or diverge from the Dictionary of Occupational Titles ("DOT") and its reasoning.  (AR 72.)  Plaintiff's one job from 1999 to the time of the hearing was as a truck driver, DOT code 924.383-014, heavy, identified as medium, SVP 4, and commonly known as over the road.  (AR 72-73.)

The first hypothetical that the ALJ gave the VE was for an individual who has no limitations in lifting or carrying, standing or walking, and sitting.  (AR 73.)  The individual is capable of simple, repetitive tasks and occasional complex tasks; needs a stable work routine that changes no more than occasionally; cannot do jobs with high production goals, such as jobs paid by the piece; cannot make life or death decisions; cannot handle confrontation, such as security work; needs a supervisor to refresh the individual's memory on simple, repetitive tasks that are part of the routine about once every two months; only occasional interaction with the public; and occasional superficial interaction with coworkers and supervisors.  (AR 73.)  The VE opined that

the individual could not perform the work of a truck driver, heavy, because of the limitation to simple things and occasional complex tasks, the limitation to a stable work routine that changes no more than occasionally, and the requirement for a reminder from the supervisor. (AR 73-74.)

The ALJ then asked the VE whether the individual in the first hypothetical with a high school education, but not in the United States, Plaintiff's past work experience, and the ability to understand simple English sentences could do other jobs. (AR 75.) The VE testified that he would consider the sedentary, light, and medium worlds of work as potentially available. (AR 75.) The individual could be a bagger, hand, DOT code 920.687-014, medium, unskilled SVP 2, and 23,827 jobs in California and 168,079 in the United States; package sealer machine operator, DOT code 920.685-074, medium, unskilled SVP 2, and 5,637 jobs in California and 44,739 jobs in the United States; and checker-laundry, DOT code 369.687-014, medium, unskilled SVP 2, and 1,923 jobs in California and 16,499 jobs in the United States. (AR 75.)

The second hypothetical that the ALJ gave the VE was for an individual who could lift and carry 10 to 20 lbs occasionally and 1 to 9 lbs frequently; could stand or walk for 4 hours and sit for 6 hours; needs the ability to sit or stand at his discretion; could occasionally twist, climb, stoop, crawl, and crouch; could frequently bilaterally reach and do gross and fine manipulation; could not do high production goals, such as those paid at a piece; could not make life or death decisions; could not do confrontation, such as security work; and would miss about 3 days a month on an unscheduled basis. (AR 75-76.) The VE testified that this individual could not work as a truck driver and could not do any other jobs as normally found in the economy. (AR 76.)

Plaintiff's counsel then asked the VE a hypothetical based on the ALJ's first hypothetical, but also added the limitation that the individual would be off task a minimum of 20% of the day. (AR 77.) The VE testified that the individual could not do the jobs given in response to the first hypothetical and "a heavy accommodation of the world of work[ ] is closed." (AR 77.)

### B.   ALJ Findings

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff meets the insured status requirements through December 31, 2016;

- Plaintiff has not engaged in substantial gainful activity since November 14, 2011, the alleged onset date;

- Plaintiff has the following severe impairments: seizure disorder, affective/anxiety disorders, headaches, hypertension, status post closed head injury, and obesity;

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1;

- Plaintiff has RFC to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except no limits in lifting and carrying, standing, walking or sitting; can never climb ladders, ropes, or scaffolds; can do constant simple repetitive tasks and occasional complex tasks; needs a stable work environment that does not change more than occasionally; cannot meet high production goals; cannot do work involving life or death decisions; would need a supervisor to refresh memory on simple repetitive tasks that are part of his work duties once every two months; and can only have occasional interactions with the public and superficial interactions with supervisors and coworkers;

- Plaintiff is unable to perform any past relevant work;

- Plaintiff was born on March 1, 1954, and was 57 years old, which is defined as an individual of advanced age, on the alleged disability onset date;

- Plaintiff has at least a high school education and is able to communicate in English;

- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled" whether or not Plaintiff has transferable job skills;

- Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform;

- Plaintiff has not been under a disability, as defined in the Social Security Act,

1    from November 14, 2011, through October 28, 2014.

2    (AR 9-21.)

3                                    **III.**

4                            **LEGAL STANDARD**

5    An individual may obtain judicial review of any final decision of the Commissioner of

6    Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  The Court "reviews the

7    Commissioner's final decision for substantial evidence, and the Commissioner's decision will be

8    disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v.

9    Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a

10   scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)

11   (internal quotations and citations omitted).  "Substantial evidence is 'such relevant evidence as a

12   reasonable mind might accept as adequate to support a conclusion.' "  Id. (quoting Richardson v.

13   Perales, 402 U.S. 389, 401 (1971)).  "[A] reviewing court must consider the entire record as a

14   whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill,

15   698 F.3d at 1159 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

16   However, it is not this Court's function to second guess the ALJ's conclusions and substitute the

17   Court's judgment for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)

18   ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's

19   conclusion that must be upheld.")

20                                   **IV.**

21                       **DISCUSSION AND ANALYSIS**

22   Plaintiff raises one challenge to the ALJ's non-disability finding.  Plaintiff argues that the

23   ALJ erred because the ALJ's reasoning for rejecting the opinion of Plaintiff's treating physician,

24   Radhey Bansal, is not legitimate.  Plaintiff asserts that Dr. Bansal assessed physical limitations

25   stemming from Plaintiff's seizure disorder, hypertension, and chronic arthritis, and that these

26   physical limitations are not rendered irrelevant because of Dr. Bansal's statement regarding

27   Plaintiff's ability to obtain a commercial driver's license.  Defendant counters that the ALJ

28   properly evaluated conflicting evidence by summarizing it in detail and interpreting it.

                                        8

1   Defendant asserts that the ALJ properly gave greater weight regarding Plaintiff's physical

2   limitations to the non-examining opinions of Dr. Alexander and Dr. Bobba than to the opinion of

3   Dr. Bansal.[3]

4        The weight to be given to medical opinions depends upon whether the opinion is

5   proffered by a treating, examining, or non-examining professional.  See Lester v. Chater, 81 F.3d

6   821, 830-831 (9th Cir. 1995).  In general a treating physician's opinion is entitled to greater

7   weight than that of a nontreating physician because "he is employed to cure and has a greater

8   opportunity to know and observe the patient as an individual."  Andrews v. Shalala, 53 F.3d

9   1035, 1040-41 (9th Cir. 1995) (citations omitted).  If a treating physician's opinion is

10  contradicted by another doctor, it may be rejected only for "specific and legitimate reasons"

11  supported by substantial evidence in the record.  Ryan v. Commissioner of Social Sec., 528 F.3d

12  1194, 1198 (9th Cir. 2008) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

13  The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific,

14  legitimate reason for rejecting a treating or examining physician' opinion, however, "it may

15  constitute substantial evidence when it is consistent with other independent evidence in the

16  record."  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The Ninth Circuit has

17  "consistently upheld the Commissioner's rejection of the opinion of a treating or examining

18  physician, based in part on the testimony of a nontreating, nonexamining medical advisor."

19  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (citing Magallanes v.

20  Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989); Andrews, 53 F.3d at 1043; Roberts v. Shalala, 66

21  F.3d 179 (9th Cir. 1995)).

22       However, medical opinions are not the only opinions that physicians render.  "In

23  disability benefits cases ... physicians may render medical, clinical opinions, or they may render

24  opinions on the ultimate issue of disability—the claimant's ability to perform work."  Garrison v.

25  Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th

26  Cir. 1998) (citation omitted)).  In Marsh, the Ninth Circuit noted that the treating source's

27

28  [3] The Court notes that the ALJ actually gave little weight to the opinions of the State agency reviewing physicians and phycologists, and therefore, gave little weight to Dr. Bobba's opinion.  (AR 19.)

1 opinion was a "medical opinion" because it contained statements from the treating source that

2 reflect judgments about the nature and severity of the claimant's impairment(s), including

3 symptoms, diagnosis and prognosis, what claimant can still do despite her impairment(s), and

4 physical or mental restrictions. <u>Marsh v. Colvin</u>, 792 F.3d 1170, 1172 n.1 (9th Cir. 2015) (citing

5 20 C.F.R. § 404.1527).  A treating physician's disability opinion is not entitled to controlling

6 weight or any special significance, because the ultimate issue of disability is for the

7 Commissioner to make, taking into account a variety of factors.  <u>See Magallanes</u>, 881 F.2d at

8 751.  However, the ALJ must present clear and convincing reasons for rejecting a physician's

9 uncontroverted opinion on the ultimate issue of disability and specific and legitimate reasons

10 supported by substantial evidence for rejecting a controverted opinion on the ultimate issue of

11 disability.  <u>See Montijo v. Sec'y of Health & Human Servs.</u>, 729 F.2d 599, 601 (9th Cir. 1984)

12 (citing 20 C.F.R. § 404.1527); <u>Rhodes v. Schweiker</u>, 660 F.2d 722, 723 (9th Cir. 1981); <u>Day v.</u>

13 <u>Weinberger</u>, 522 F.2d 1154, 1156 (9th Cir. 1975)); <u>Reddick</u>, 157 F.3d at 725 (citing <u>Lester</u>, 81

14 F.3d at 830).

15      Here, on July 13, 2012, Dr. Bansal noted that the DMV had denied Plaintiff a driver's

16 license per federal law for someone taking Dilantin.  (AR 434.)  Dr. Bansal stated, "[s]o he can

17 not [sic] drive truck and hence can not [sic] work as a truck driver as that is the only job he has

18 ever done."  (AR 434.)   In the plan section of the note, Dr. Bansal stated that "[Plaintiff] is

19 totally disabled and permanently so as can not [sic] drive the truck and so can not [sic] work.

20 Knows no other job etc."  (AR 435.)  On August 23, 2012, Dr. Bansal stated that "[Plaintiff]

21 remains totally disabled and permanently so as can not [sic] drive the truck and so can not [sic]

22 work.  Knows no other job etc."  (AR 438.)  On November 1, 2012, Dr. Bansal noted that

23 Plaintiff [h]as been denied license to drive trucks etc for life and can not drive truck which was

24 his profession."  (AR 469.)  On December 27, 2012, Dr. Bansal noted that Plaintiff "[h]as been

25 denied license to drive trucks etc for life and can not [sic] drive truck which was his profession

26 and so disabled permanently."  (AR 465.) As pointed out by the ALJ, Dr. Bansal filled out a

27 medical source statement-seizure disorder on May 3, 2013.  (AR 18, 478-80.)  The medical

28 source statement states that Plaintiff cannot get a commercial driver's license because of

1  seizures, so he cannot work as a truck driver.  (AR 480.)

2      However, Dr. Bansal's opinion is not only about Plaintiff's ability to be a truck driver.

3  Dr. Bansal's opinion also contains functional limitations.  In the May 3, 2013 medical source

4  statement, Dr. Bansal found that Plaintiff could stand and walk 4 hours and sit for 6 hours in an

5  8-hour working day; needs to shift positions at will; could lift and carry in a competitive work

6  situation less than 10 lbs frequently and 10 lbs occasionally; could rarely crouch, squat, and

7  climb ladders and stairs; could occasionally twist and stoop; could use bilateral hands to grasp,

8  turn, and twist objects 50% of an 8-hour workday; could use bilateral fingers to do fine

9  manipulations 75% of an 8-hour workday; could use bilateral arms for reaching, including

10 overhead, 60% of an 8-hour workday; and would be absent from work about 3 days per month as

11 a result of his impairments.  (AR 479-80.)  Dr. Bansal also found that Plaintiff's anxiety affects

12 his physical condition and he occasionally experiences pain or other symptoms severe enough to

13 interfere with the attention and concentration needed to perform even simple work tasks.  (AR

14 480.)  Dr. Bansal opined that Plaintiff is capable of low stress jobs.  (AR 480.)

15     The only reason that the ALJ gave for giving little weight to Dr. Bansal's opinion is that

16 "the evaluation is based upon [Dr. Bansal's] understanding of State of California Vehicle Code,

17 rather than his medical expertise.  He appears to believe that since [Plaintiff] cannot return to his

18 past employment as a truck driver he is disabled."  (AR 19.)  This reason is not a specific or

19 legitimate reason for rejecting the functional limitations that Dr. Bansal opined.  It is a reason

20 that is specific to the part of Dr. Bansal's opinion regarding Plaintiff's ability to be a truck driver

21 and the finding that Plaintiff is permanently disabled.

22     Defendant points to the fact that the ALJ gave greater weight to Dr. Alexander's opinion

23 about Plaintiff's physical limitations than to the unsupported restrictive opinion of Dr. Bansal.

24 While Defendant cites Tonapetyan, the instant case is distinguishable.  In Tonapetyan, "[t]he

25 ALJ rejected [the treating physician's] opinion because it was unsupported by rationale or

26 treatment notes, and offered no objective medical findings to support the existence of [plaintiff's]

27 alleged conditions."  Tonapetyan, 242 F.3d at 1149.  The Ninth Circuit found that the record

28 supported the ALJ's proffered reasons.  Id.  The Ninth Circuit then also found that the contrary

1   opinions of an examining physician and a non-examining medical expert served as additional

2   specific and legitimate reasons for rejecting the treating physician's opinion.  Id.  The Ninth

3   Circuit held that the non-examining medical expert's opinion was substantial evidence

4   supporting the ALJ's findings because it was based on the examining doctor's objective findings,

5   which were independent of the findings relied on by the treating physician.  Id.

6        Here, Dr. Alexander's opinion is a non-examining medical expert opinion that is not

7   based on independent findings.  The paragraph where the ALJ discusses Dr. Alexander's opinion

8   and the sentence where the ALJ gave full weight to Dr. Alexander's opinion do not allow the

9   Court to draw an inference as to why Dr. Bansal's opinion regarding the functional limitations

10  was rejected that meets the specific and legitimate standard.  While an ALJ can meet the specific

11  and legitimate reason standard by summarizing the facts and conflicting clinical evidence in

12  detailed and thorough fashion, stating his interpretation and making findings.  Here, the ALJ did

13  not do so.  See Magallanes, 881 F.2d at 755.  The Court cannot consider Defendant's post hac

14  rationalizations.  "A reviewing court can evaluate an agency's decision only on the grounds

15  articulated by the agency."  Ceguerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738

16  (9th Cir. 1991).  Therefore, the Court finds that the ALJ erred by not providing specific and

17  legitimate reasons supported by substantial evidence in the record for rejecting Dr. Bansal's

18  opinion.

19       The harmless error inquiry is "whether the ALJ's decision remains legally valid, despite

20  such error."  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008).  In

21  order to find an error harmless, the Court must be able to confidently conclude that no reasonable

22  ALJ, when fully crediting the opinion, could have reached a different disability determination.

23  See Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006).  A district court

24  may only apply harmless error in a way that affirms the agency on a ground invoked by the ALJ.

25  Marsh, 792 F.3d at 1172 (citing Stout, 454 F.3d at 1054).  The Ninth Circuit has held that "where

26  the magnitude of an ALJ error is more significant, then the degree of certainty of harmlessness

27  must also be heightened before an error can be determined to be harmless.  In other words, the

28  more serious the ALJ's error, the more difficult it should be to show the error was harmless."

1    Marsh, 792 F.3d at 1173 (finding that it could not confidently conclude that the error was

2    harmless in those circumstances, where the ALJ did not mention a treating source's medical

3    opinion that the plaintiff's condition rendered her "pretty much nonfunctional").

4          Here, the Court cannot confidently conclude that no reasonable ALJ, when fully crediting

5    Dr. Bansal's opinion regarding the functional limitations, could have reached a different

6    disability determination.  The Court next determines the proper remedy for the ALJ's error.

7          Plaintiff contends that the Court should credit as true Dr. Bansal's opinion and find that

8    Plaintiff would be disabled because he would not be able to work full-time on a regular and

9    continuous basis based on the VE's testimony.  (AR 76.)  Defendant argues that the proper

10   remedy would be to remand for further administrative proceedings.

11         The ordinary remand rule provides that when "the record before the agency does not

12   support the agency action, ... the agency has not considered all relevant factors, or ... the

13   reviewing court simply cannot evaluate the challenged agency action on the basis of the record

14   before it, the proper course, except in rare circumstances, is to remand to the agency for

15   additional investigation or explanation."  Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d

16   1090, 1099 (9th Cir. 2014).  This applies equally in Social Security cases.  Treichler, 775 F.3d at

17   1099.

18         Under the Social Security Act "courts are empowered to affirm, modify, or reverse a

19   decision by the Commissioner 'with or without remanding the cause for a rehearing.' "  Garrison,

20   759 F.3d at 1019 (emphasis in original) (quoting 42 U.S.C. § 405(g)).  The decision to remand

21   for benefits is discretionary.  Treichler, 775 F.3d at 1100.  In Social Security cases, courts

22   generally remand with instructions to calculate and award benefits when it is clear from the

23   record that the claimant is entitled to benefits.  Garrison, 759 F.3d at 1019.

24         Here, the record casts doubt on whether Plaintiff is disabled.  His last reported seizure

25   was in February 2012.  (AR 59, 426, 461, 583.)  Plaintiff has been therapeutically taking

26   medication for his seizures.  (AR 55-56.)  Dr. Alexander testified that although there are

27   complaints of back pain, there is no objective basis in the medical evidence for Dr. Bansal's

28   diagnosis of disabling degenerative disc disease or osteoarthritis and the limitations associated

with these conditions.  (AR 57.)  There are treatment notes in 2011, 2012, and 2014 that show that Plaintiff did not complain of lower back tenderness, had normal strength and ranges of motion in his extremities, had normal motor functions, and could walk unassisted.  (AR 409, 412, 416, 42-23, 505, 554, 569-71.)  Therefore, the Court finds that this matter should be remanded for further administrative proceedings.

## V.

## ORDER

Accordingly, IT IS HEREBY ORDERED that:

1.      Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED IN PART;

2.       Defendant's motion for summary judgment is DENIED;

3.      This matter is remanded for further administrative proceedings in accordance with this order; and

4.      The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **March 21, 2017**

UNITED STATES MAGISTRATE JUDGE